IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BIS ADVANCED SOFTWARE SYSTEMS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> RED BEND SOFTWARE, INC., <br> RED BEND, LTD., <br> TIME WARNER INC., <br> ICQ, INC. <br> INSTALLSHIELD SOFTWARE CORP., <br> and <br> SCANSOFT, INC. <br><br> Defendants. | Civil Action No. 04cv11960 (RWZ) |

## DECLARATION OF MIGUEL DANIELSON

I, Miguel Danielson, do declare and state:

1. I am an attorney practicing in the Commonwealth of Massachusetts at the law firm of Goodwin Procter LLP. Goodwin Procter represents Red Bend Ltd., Red Bend Software, Inc., ICQ Ltd., ICQ Inc., Time Warner Inc., Installshield Software Corp., and Scansoft, Inc. in this action. I have participated in the collection and production of documents from Red Bend Ltd., Red Bend Software, Inc., ICQ, Ltd., and ICQ, Inc. with respect to the discovery proceedings in this Action. Set forth below is a description of that collection and production of documents.

### Collection of Documents from Red Bend Software, Inc.

2. On April 28, 2005, I, along with another attorney and a paralegal, visited the offices of Red Bend Software, Inc., in Framingham, MA. The three of us spent approximately

four hours in that office gathering documents and interviewing each of the only five employees based there about the documents in their possession or control.

3. Following our visit to the offices of Red Bend Software, Inc., staff members from Goodwin Procter re-visited the Framingham office in order to collect digital copies of any documents identified. In particular, entire folders, and in some cases entire hard-drives, were downloaded for review, and, where appropriate, production. In addition, all paper documents that were identified as potentially responsive were copied or sent to the offices of Goodwin Procter to be copied and reviewed.

4. After identifying and gathering documents, the documents were reviewed, and all non-objectionable, responsive documents were produced to BIS.

**Collection of Documents from Red Bend Ltd.**

5. On April 30, 2005, I flew to Israel with Ethan Horwitz to identify and gather documents at Red Bend Ltd.'s office in Rosh Ha'ayin. Together we interviewed personnel to understand where documents would be located and from the morning of Monday, May 2, 2005, through the end of the business day on Thursday, May 5, 2005, I worked on the task of identifying documents for review. With the exception of one half day, during which I visited the offices of ICQ Ltd. to collect documents there, all of that time was spent at Red Bend, Ltd.

6. During my four day visit with Red Bend Ltd. I met with numerous current employees of the company, including those most knowledgable about the material facts of the case and the topics of BIS's discovery requests.

7. After getting an understanding of who would have requested documents, I interviewed each relevant employee in his or her respective office. Every shelf, drawer, and filing cabinet in each employee's office was reviewed for responsive documents. In addition, I

reviewed the contents of each interviewed employee's computers (both desktop and laptop, as applicable) with their assistance to identify the contents of each electronic document or group of documents on the computers. Any documents or groups of documents determined to be potentially responsive were identified for electronic collection. In most cases, this task involved opening and viewing the contents of hundreds or thousands of directories and sub-directories on the computer of each employee I interviewed. During this effort, I was purposefully over-inclusive in an effort to ensure that no relevant, responsive documents were overlooked.

8. The entire e-mail inboxes were also collected for all employees reasonably likely to have relevant, responsive information in their e-mail.

9. In summary, I met with each of the present employees substantively involved with the aspects of the company's operation that are in any way relevant to this litigation and/or BIS's discovery requests. I then reviewed with each of them the contents of every electronic and paper document in their possession and selected documents on an over-inclusive basis to be sent to the United States for a more comprehensive review, and, where appropriate, production to BIS.

10. Only one employee was not present, and I had full access to his office and his computer and worked with his assistant to review any documents in his possession.

11. Due to the highly sensitive nature of the documents, which included, among other things, communications with customers, licenses, and business strategy documents, precautions such as data encryption were taken, which added to the time necessary to prepare the documents for transmission to our offices in the United States.

12. In addition, the process of digitally transferring the documents from Israel to Boston was not without complication. For example, one of the DVD volumes of data was found

to be corrupt after it had already been downloaded, unencrypted, decompressed, and processed in our Boston office. Therefore, all of that information had to be re-sent to us and the process repeated.

13. After the documents were received in electronic format (including digital scans of the paper documents), decrypted, and decompressed, they had to be reviewed. For the review, the documents had to either be printed to hard copy or loaded into an electronic system for review. We chose the latter based on the belief that it ultimately saves time, cost and burden for the documents to be reviewed and stored electronically rather than printed to paper. However, the process of importing many tens of thousands of documents into any database or document management system is also time consuming.

14. All of these documents were then reviewed for production. For this review, additional attorneys and paralegals were added to the team for this case for the sole purpose of producing the materials as quickly as possible.

15. Due to the parties' informal understanding that we were to try to produce the important documents first, on May 16, 2005, prior to our trip to Israel, we produced approximately 85 Megabytes of computer source code and related files, representing approximately 56,000 pages of source code data, if printed to paper. At that time we also produced certain license agreements. On June 7, 2005, we produced our next round of documents, including over 7,500 pages of documents collected from the Red Bend entities in early May, and then processed, transferred, and imported into our electronic system during the second half of May. Then, on June 13, 2005, we produced an additional approximately 9,500 pages of documents as we continued to review as quickly as possible with a team of four staff members including two attorneys and two paralegals. On June 17, 2005, while continuing to

review documents as quickly as we were able, we produced over 18,400 pages of documents. On June 29, 2005, we produced over 5,600 additional pages of documents as well as CD-ROMS containing executable versions of Red Bend's software, and on July 12, 2005, we produced over 2,400 documents. In total, for the Red Bend entities, we have produced nearly 45,000 pages of documents, the overwhelming majority of which were produced in or before June.

**ICQ Ltd.**

16. On Wednesay May 4th, I visited the offices of ICQ Ltd. In Tel Aviv, Israel. Once there, I met with attorneys from the company to discuss document gathering for production. Subsequently, I met with relevant business employees at the company I visited with each non-attorney employee their respective office and we went through the contents of their computers to determine whether any responsive documents were contained therein. This search for relevant, responsive documents also included e-mail.

17. All of the documents identified on the computers of those I met with, or identified as a result of the e-mail searching, were collected by attorneys for ICQ and transmitted to us in Boston for review and production.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 19th day of August, 2005.

Miguel C. Danielson