IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BIS Advanced Software Systems, Ltd., ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 04-11960-RWZ |
| Red Bend Software, Inc., *et al*, ) | |
| Defendants. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

Plaintiff BIS Advanced Software Systems, Ltd. (hereinafter, "Plaintiff") submits this response to Defendants' Motion to Compel Production of Documents and a Proper Rule 30(b)(6) Witness and for Sanctions.

**I.   Introduction**

Procedurally, Defendants failed to properly conference this motion as required by Fed. R. Civ. P. 37 and Local Rule 7.1. As discussed in more detail below, Defendants did not even wait for Plaintiff's responses to Defendants' requests for additional discovery. Moreover, substantively, Defendants' motion is not supported by the facts. As discussed below, Defendants mischaracterize the deposition testimony underlying their motion, overstate their arguments for sanctions, and rely on hyperbole alone rather than straightforward facts. By their premature motion and with distortions of fact, Defendants are burdening both Plaintiff and this Court, and are attempting to achieve through sanctions presumptions of fact which they cannot prove in evidence. Therefore, Defendants' motion should be denied both on the merits and in light of Defendants' procedural failings.

II.   **Statement of the Facts**

Defendants recitation of the "facts" distorts the record. Although it is true that the parties exchanged their requests for production of documents in March, and that Plaintiff produced two sets of documents by the end of June, Defendant Red Bend did not produce <u>any documents until mid-May</u>, Defendant ICQ did not produce <u>any documents until the end of June</u>, and Defendant InstallShield Corporation <u>failed to produce any documents at all, even to this day</u>. Even now, approximately eight months after Plaintiff's request for production of documents, Defendants refuse to state that their document production is complete. Therefore, in July Plaintiff decided not to proceed with the scheduled depositions in Israel, because, as Defendants well know, Defendants had failed to produce key relevant documents that were central to the scheduled depositions. Even though Defendants characterized their document production as "largely complete" at that time, they have produced more than 1,800 additional pages of documents since then, and even to this date have not produced their license agreements with third parties. Thus, for both sides' counsel to have traveled to Israel for two weeks and conduct depositions under such circumstances would have been inefficient, as the depositions would have had to have been continued once Defendants finally produced the remaining documents.

Defendants have mischaracterized the testimony of Mr. Daniel Glazman, further distorting the record. Plaintiff produced Mr. Glazman for deposition on September 20, 2005 as its designated Rule 30(b)(6) witness on document discovery. The witness was prepared to and did testify on the topics noted in Defendants' notice of deposition. At the deposition, Defendants' questioning repeatedly exceeded the scope of their notice of deposition. *See, e.g.* Tr. Glazman Dep. pp. 26, 27, 29, 35, 44, 54, 63, 64, 67, 86, 98, 108, 115, 117, and 122. When the witness was unable to answer a proper question, he consulted with his office in Israel during

a break in the deposition, obtained the requested information, and provided it during the deposition. Tr. Glazman Dep. pp. 88-92.

After the deposition of Mr. Glazman, Defendants voiced several concerns regarding discovery. On September 28, 2005, during a preliminary conversation about Defendants' concerns, Plaintiff's counsel advised that it would be difficult to quickly communicate with the client and provide answers because of the then-upcoming Jewish holidays, but that Defendants' concerns would be addressed as soon as possible. Several religious holidays (including Rosh Hashanah, Yom Kippur, Sukkot, Shemini Atzeret, and Simhat Torah) all fell within the month of October this year, with the effect that Plaintiff's offices in Israel were closed for a substantial portion of the month, and Plaintiff's counsel's communication with the client was limited. For this reason, Plaintiff has not yet fully responded to Defendants' concerns, except to say that the concerns are being considered, and that Plaintiff will respond as soon as possible. Defendants, though, could not wait a reasonable amount of time for a response, and instead, rushed to the Court without taking reasonable steps to attempt to resolve or at least narrow the issues.

Moreover, as the parties are currently conducting earnest settlement discussions, Plaintiff inquired whether Defendants would agree to file a joint motion requesting an extension of time in which to file the instant paper; but Defendants refused to even extend that courtesy.

**III.   Argument**

   A.   <u>Defendants' Motion Is Premature</u>

Parties moving to compel must certify that they have "in good faith conferred or attempted to confer ... in an effort to secure the disclosure without court action," Fed. R. Civ. P. 37(a)(2)(A), and that "they have conferred and have attempted in good faith to resolve or narrow the issue," Local Rule 7.1(a)(2). In the present case, Defendants have failed to do so. Although

3

Defendants have stated their concerns, Defendants have not met the standard articulated in both the Federal and the Local Rules, because they have not actually conferred, nor have they attempted to resolve this dispute without burdening the Court. Rather, Defendants have made their demands, and then, without even awaiting a reply, have careened to the courthouse, demanding not only a Court Order, but also sanctions. Because Defendant's motion is premature, and does not meet the requirements of the Rules, Defendant's motion to compel should be denied.

  B. <u>Plaintiff Has Produced All Requested, Relevant, Non-privileged Documents</u>

    1. *Plaintiff Has Produced the Relevant Software Project Files*

Plaintiff searched its electronic files for relevant software project files. Tr. Glazman Dep. pp. 43-50. Specifically, Plaintiff searched its servers by key word, and produced all software files resulting from the search, other than the current versions of the source codes for its commercial products. Tr. Glazman Dep. pp. 74, 81-82. Plaintiff has not produced its source codes because they are not relevant to this case.

A party may obtain discovery when the information is relevant to the subject matter of the pending action, relating to a claim or defense in the case. Fed. R. Civ. P. 26(b)(1). Plaintiff's source codes for its commercial product are not relevant to any claim or defense, as discussed in greater detail below, for two reasons: (i) the source code only exists in its current version, and not in the version as available at the time of filing of the application from which the patent in suit issued; and (ii) the commercial embodiment of an invention is not relevant to an infringement analysis.

First, only a current version of the source code exists. It is Plaintiff's practice, in the ordinary course of business, to save only the latest versions of the software project files. Tr.

Glazman Dep. pp. 67-68. This method of saving versions of a file is the same as the way one might save an electronic version of a document through various drafts — successive versions are simply saved with the previous file name, with no nefarious intent to delete the previous draft. Therefore, previous versions, such as versions of the source code that existed prior to the filing of the application that resulted in the patent in suit, no longer exist.

Second, infringement is determined by comparison of the accused product to the patent claims, without regard to the patentee's commercial product. *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476 (Fed. Cir. 1984). It is wholly irrelevant to this lawsuit whether the patentee's products infringe the claims. Therefore, a current version of Plaintiff's source code, having been modified numerous times since the filing of the patent application cannot be relevant to the instant litigation.

For these reasons, Plaintiff did not produce the current versions of the source code for its commercial products, but did produce all software files resulting from its search. Thus, Plaintiffs have already produced the relevant, responsive, non-privileged software project files in its possession.

    2.    *Plaintiff Has Produced the Relevant Foreign Counterparts*

Plaintiff agreed to produce relevant documents in its possession that refer or relate to the prosecution of the patent in suit, including any foreign counterparts. Plaintiff has collected from its patent prosecution attorneys the existing, relevant files, and Plaintiff has produced these to Defendants, with the exception only of privileged documents.

Defendants note that Plaintiff produced a document stating that there are "37 patents approved, 12 pending" relating to Plaintiff's commercial product, TransFast. Upon information and belief, this document was created by a sales manager employed by Plaintiff approximately

5

two years ago, who mistakenly used the term "patents," when he meant "claims." Defendant could have easily ascertained this information by asking Plaintiff the meaning of the "37 patents approved" statement at the Rule 30(b)(6) deposition, but failed to do so.

Thus, Plaintiffs have already produced the relevant, responsive, non-privileged foreign counterparts of the patent in suit.

        3.    *Plaintiff Has Produced the Relevant Customer Files*

Similarly, Plaintiff agreed to produce, and did produce relevant documents in its possession that relate to any proposed or actual sale or license of the relevant technology. Mr. Glazman testified that Plaintiff searched its customer files, and transmitted all potentially relevant results of the search to Plaintiff's counsel. Tr. Glazman Dep. pp. 21-22, 65, 74. With the exception of privileged documents, all the relevant documents resulting from this search were produced to Defendants. To the extent that Defendants believe that any contracts, payment information, or invoices were not included in Plaintiff's production, these documents do not exist.

Thus, Plaintiffs have already produced the relevant, responsive, non-privileged customer files.

        4.    *Plaintiff Has Produced the Relevant Accounting Files*

Again, Plaintiff agreed to produce, and did produce relevant accounting documents in its possession as they exist. Mr. Glazman testified that Plaintiff's accountant's offices were searched, and that the results of the search were transmitted to Plaintiffs counsel. Tr. Glazman Dep. pp. 16-17. With the exception of privileged documents, the relevant documents resulting from this search were produced to Defendants. To the extent that Defendants believe that any accounting files were not included in Plaintiff's production, these documents do not exist.

Thus, Plaintiffs have already produced the relevant, responsive, non-privileged accounting files.

     5.    *Plaintiff Has Produced the Relevant E-mail Attachments*

Mr. Glazman testified that, if an e-mail still exists electronically, then the attachment also still exists. Tr. Glazman Dep. p. 38. Ignoring the subjunctive clause, though, Defendants extrapolate from this statement that all the attachments must still exist.

Mr. Glazman testified that Plaintiff searched all the electronic files in which relevant documents could have been located, and transmitted the results of the search to Plaintiff's counsel. Tr. Glazman Dep. pp. 37. With the exception of privileged documents, Plaintiff produced the relevant documents resulting from this search to Defendants.

Defendants point to only one example where they did not receive an attachment, the e-mail identified by Bates number BIS11683. Plaintiff has investigated and confirmed that the attachment to this e-mail no longer exists because it was corrupted by anti-virus software during routine electronic storage.

Thus, Plaintiffs have already produced the relevant, responsive, non-privileged e-mail attachments that exist and are not aware of any other attachments not provided to Defendants.

    C.    <u>Plaintiff Has Conducted a Complete and Thorough Search</u>

Contrary to Defendants' assertion, Plaintiff has conducted a complete and thorough search. Plaintiff has produced more than 15,000 pages of relevant documents. Plaintiff has completely and thoroughly searched its paper files, including searches of any place where responsive documents could reasonably have been located, including its offices, its patent attorney's offices, and its accountant's offices. Tr. Glazman Dep. pp. 16-17. Additionally, Plaintiff has searched its electronic files, including searches of any desktop, laptop, and server

7

computers, including e-mail communications, where responsive documents could reasonably have been located. Tr. Glazman Dep. pp. 32-34. Mr. Glazman further testified that the results of Plaintiff's search were transmitted to Plaintiff's counsel without review or selection. Tr. Glazman Dep. pp. 74, 81-82, 89.

Plaintiff did not ask any of its programmers to search their own computers for documents because, as Mr. Glazman testified, no responsive documents could reasonably have been located on their computers. Tr. Glazman Dep. pp. 32. Indeed, the program files on which the programmers worked <u>were all stored on the server, which was searched</u>. Tr. Glazman Dep. pp. 32.

    D.    <u>Plaintiff Has Not Destroyed Relevant Documents</u>

Defendant's assertions regarding files and documents that have been allegedly destroyed are grossly overstated and misleading. Defendants fail to identify a single relevant document or file that has been destroyed to which it would be entitled.

Mr. Glazman testified that, prior to several months ago, Plaintiff had employed a system of magnetic media cassettes for disaster recovery of its computer files. Tr. Glazman Dep. pp. 25 and 69. This back-up information included information stored on the file server within the previous three to six months. Sometime around June 2005, this back-up system was modified to employ an optical disk storage system. The new system similarly includes information stored on the file server within the previous three to six months, with the only difference being that instead of saving this information to magnetic media cassettes, it is now saved to optical disk.

This modification of Plaintiff's disaster recovery system was not destruction of evidence for at least three reasons. First, any information stored on the magnetic media tapes would have been duplicative of documents stored on the server. Tr. Glazman Dep. pp. 32, 92. As discussed

above, Plaintiff searched the server, and produced the results of this search. Tr. Glazman Dep. pp. 33-34, 74, 81-82. In the same way that Defendant Red Bend "deduped" certain electronic information before producing documents to Plaintiff, by removing multiple, identical duplicates, Plaintiff has simply not produced documents which would be unreasonably cumulative or duplicative. *See* Fed. R. Civ. P. 26(b)(2)(i).

Second, the back-up storage system did not contain any information relevant to the present case. Any information stored on the magnetic media tapes could only have dated back three to six months from the date of the modification of the system. Tr. Glazman Dep. pp. 25. That is, the earliest information that would have been available on the magnetic media cassettes as of June 2005 would have been dated from no earlier than January 2005. As the patent was filed March 22, 1999, such documents could not possibly be relevant to any issues in this case.

Third, the magnetic media cassettes were a disaster recovery system, and not an archive. Tr. Glazman Dep. pp. 128. The distinction is that a disaster recovery system is a rolling copy of current documents, which is periodically overwritten, in this case, every three to six months, whereas an archive is a repository of documents kept in perpetuity for future reference. In Plaintiff's usual course of business, as is a generally accepted business method, Plaintiff overwrote the disaster recovery system in the interests of efficiency. The goal of the system was to provide a cost-efficient back up in case of the loss of recent documents. Due to the cost of storing information, Plaintiff determined the efficient point to be between three and six months, beyond which time it would likely not have been cost beneficial to store the information in the disaster recovery system. Therefore, even if the disaster recovery system had not been modified from magnetic media to optical disk, at the time of Defendants' request for document production, any information that had been saved on the magnetic media cassettes would only have

9

encompassed information saved within at most the previous six months, that is documents dating to January 2005 at the earliest. As discussed above, documents modified in the January to June 2005 time period are not relevant to any defense in this case, as they cannot possibly relate to Defendants' prior art defense.

Accordingly, Plaintiff has not destroyed any relevant documents. Defendants' assertion to the contrary is nothing more than a false alarm that the sky is falling. Defendants' request for sanctions regarding the on sale bar and anticipation should be seen for what it is: a blatant attempt to achieve through preclusion what they cannot prove through evidence.

     E.     <u>Plaintiff's Corporate Designee Was a Proper Witness</u>

In response to a Rule 30(b)(6) notice of deposition, a corporation may designate a person to "testify as to matters known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). It is well established that such a corporate designee is not required to have personal knowledge as to the facts within the scope of the notice of deposition, rather, the designee must be educated upon those facts. *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 34 (D. Mass. 2001). Although Defendants complain that Plaintiff's corporate designee, Mr. Glazman, "had little first hand knowledge of the search for and gathering of documents," no such first hard knowledge is required. *Id.* Defendants further complain that Mr. Glazman had reviewed only a single document — the notice of deposition itself — in preparation for his deposition, but fail to note that he had clearly spent numerous hours discussing the facts of the document search, and educating himself upon the subject as required. Tr. Glazman Dep. pp. 7-11.

Defendants disingenuously argue that their notice of deposition, which included a topic encompassing "BIS's search for and gathering of documents in response to Defendants' First

Request for Production of Documents an Things," includes the scope and result of that search and the nature of what was gathered.  Generally, where a notice of deposition identifies "the search for and gathering of documents," it is reasonable to understand that the inquiry will be as to the search itself, including deposition upon topics such as: the physical and electronic locations searched; the procedures used to perform the search; when the search was performed; how long it took to complete; how many people and which people were involved in the search; etc.  It is not reasonable, though, that such a notice would be understood to include the results of the search and the nature of what was gathered, particularly because the notice could readily have been drafted to specifically include such topics in the first place, such that the designee would be able to prepare for deposition on these topics.[1]

Defendants should not be allowed to protest now, with hind sight, that they would have liked the witness to have been prepared on the subjects of the result of the search and the nature of what was gathered, when it was they who drafted the notice of deposition.

To the extent that Mr. Glazman was not able to answer certain questions when posed, Mr. Glazman called his office in Israel during a break, and supplemented his answers after the break.  Tr. Glazman Dep. pp. 88-92.  Thus, Defendants received exactly what they requests — an adequately prepared Rule 30(b)(6) witness.

Finally, even if the Court were to find that Mr. Glazman was not adequately prepared for the Rule 30(b)(6) deposition, Plaintiff notes that the parties are currently scheduling depositions to be conducted in Israel in December.  As the inventor of the patent in suit, Mr. Mordechay Miron will likely be deposed in both his personal capacity and as a corporate designee on certain topics.  Plaintiff would not object to Defendants questioning Mr. Miron (the very person

---

[1]   It must be noted that it is not reasonable to expect any witness, even one with personal knowledge, to be able to testify about each and every document produced.

11

Defendants suggest would be the more appropriate witness) on the Rule 30(b)(6) topics discussed in Defendants' motion.

F.   Sanctions Are Neither Warranted Nor Appropriate

Essentially, Defendants request that they be relieved of their burden of rebutting the presumption of validity of the patent in suit. Plaintiff has not acted in any way that would be sanctionable. Defendants have not been denied production of any pertinent documents. Therefore, Defendants are clearly not entitled to any sanction, much less the severe sanctions they request. *See Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 447 (1st Cir. 1997). Particularly, where, as here, there is no evidence of bad faith, such sanctions are neither warranted nor appropriate.

G.   An Award of Costs Is Neither Warranted Nor Appropriate

An award of costs to bring a motion compelling discovery is not appropriate when the movant failed to make a good faith effort to resolve the dispute without the Court's intervention, or when the non-disclosure was substantially justified. Fed. R. Civ. P. 37(a)(4)(A). Here, even if the Court were to grant the motion to compel, Defendants' request for sanctions should be denied for two reasons. First, Defendant rushed to bring this motion before Plaintiff could even provide an answer to Defendants' concerns. At the very least, it is likely that the parties would have been able to narrow the issues presented to the Court, and thus limit the costs incurred in preparing the present briefs. Second, if any relevant, non-privileged documents were not produced, such non-disclosure was substantially justified. Plaintiff herein has stated its good faith positions and reasons, such that it is clear that this case does not involve a defiant or recalcitrant party, but rather, simply an honest disagreement about the scope of discovery.

If costs are warranted at all in this case, they should be to Plaintiff. Defendants rushed to bring this motion, did not attempt to resolve or even to narrow the issues in good faith, and would not even agree to request an extension of time for the filing of the instant paper while the parties conduct earnest settlement negotiations.

## IV.     Conclusion

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants' Motion to Compel Production of Documents and a Proper Rule 30(b)(6) Witness and for Sanctions.

Respectfully submitted,

BIS ADVANCED SOFTWARE SYSTEMS, LTD.

By its attorneys,

 /s/ Scott McConchie
_____
Daniel P. Tighe (BBO #556583)
Scott McConchie (BBO #634127)
GREISINGER, TIGHE & MAFFEI, LLP
176 Federal Street
Boston, MA 02110-2214
(617) 542-9900

Neil F. Greenblum
Michael J. Fink
Caitlin Lhommedieu
Benjamin P. Kota
GREENBLUM & BERNSTEIN, P.L.C.
1950 Roland Clarke Place
Reston, VA 20191
Dated: November 3, 2005                   (703) 716-1191

(L466P002)