IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BIS ADVANCED SOFTWARE SYSTEMS, LTD.,<br><br>    Plaintiff,<br><br>    v.<br><br>RED BEND SOFTWARE, INC.,<br>RED BEND, LTD.,<br>TIME WARNER INC.,<br>ICQ, INC.<br>INSTALLSHIELD SOFTWARE CORP.,<br>and<br>SCANSOFT, INC.<br><br>    Defendants. | Civil Action No. 04cv11960 (RWZ) |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND
A PROPER RULE 30(B)(6) WITNESS AND FOR SANCTIONS**

Defendants Red Bend Software, Inc., Red Bend, Ltd., ICQ, Inc., and Installshield Software Corp. (collectively "Defendants") submit this reply to address certain issues raised in Plaintiff's Opposition to Defendants' Motion to Compel ("Opposition").

BIS concedes that its Rule 30(b)(6) witness was not prepared to testify about the details of BIS's search for documents or the nature of the documents gathered. Incredibly, BIS argues that questions concerning these topics were beyond the scope of the deposition topic "BIS's search for and gathering of documents in response to Defendants' First Request for Production of Documents and Things." BIS further concedes that it has destroyed documents since the commencement of litigation, but asks the Defendants and the Court to accept on faith – not even a declaration was filed to support this claim – that none of the materials that were destroyed were relevant. BIS also continues to refuse to produce relevant documents, including the source code

*Formatted: Font: 8 pt*
*Deleted: LIBNY/4476737.1*

and software for the products that its Rule 30(b)(6) witness described as the products covered by the patent.

For the reasons set forth below and in Defendants' Memorandum in support of its motion to compel, BIS (1) should be compelled to produce an adequate Rule 30(b)(6) witness; (2) should be compelled to conduct an adequate search and produce responsive documents; and (3) should be sanctioned for its destruction of documents and discovery conduct to date.

**A.      BIS's Inadequate Rule 30(b)(6) Witness**

This Court ordered BIS to produce a witness in response to Red Bend's notice of Rule 30(b)(6) deposition concerning document production.  This Notice included the topic of "BIS's search for and gathering of documents in response to Defendants' First Request for Production of Documents and Things."  BIS did not object to this or any other topic of the notice prior to the deposition.

BIS now argues, however, that the topic "search for and gathering of documents" does not include the "result of the search and nature of what was gathered."  Opposition at 11.  Based on any reasonable reading of the notice, BIS's position is not credible.

Moreover, although BIS appears to concede that the deposition topics encompassed the scope and nature of the search for documents (*see* Opposition at 11), the witness that BIS produced did not even know what criteria were used in this search and he could not identify the keywords used in the electronic search for documents. Tr. 73:7-18 (Defendants' Memorandum, Ex. J).  Instead, the witness's testimony was limited to variations on the unsatisfactory response that BIS's counsel had previously repeated – that BIS searched for and produced everything. The reason for this deposition was that Red Bend has good reason to suspect the production was

incomplete. A witness whose knowledge is limited to "if it existed, it was produced" does not test the completeness of the production.

Essentially conceding that its witness was inadequate, BIS further argues that, to the extent the Court finds that the BIS witness was not adequately prepared, Defendants can depose the appropriate witness, Mr. Miron, in Israel. Opposition at 11-12. However, BIS ignores that it was ordered to produce a proper 30(b)(6) witness prior to September 22, 2005. Further, Red Bend sought to take this document production deposition before going forward with depositions in Israel to attempt to obtain a proper document production prior to traveling to Israel for the substantive depositions. Not only does BIS' proposed solution fail to address this issue, but it also ignores the expense incurred and time wasted by Defendants in taking the deposition of the improper witness.

In short, after having been ordered by the Court to produce a witness on document issues, BIS asks this Court to let it get away with producing an unprepared Rule 30(b)(6) witness without consequence. Defendants request that the Court sanction BIS for this behavior.

**B.    BIS's Destruction of Documents**

Notably, BIS does not deny that it has destroyed backup tapes since commencement of litigation. Instead, BIS argues that its destruction of documents was unimportant because, according to BIS, the backup tapes (1) were duplicative of information on BIS's server; (2) contained information going back only 3-6 months before BIS updated its backup system; and (3) were a disaster recovery system, not an archive. These excuses are incorrect or not credible, and none justifies the destruction of documents by Plaintiff after Plaintiff became aware of its potential claims against Defendants.

Plaintiff's argument that the backup tapes would have been duplicative of information on the server is belied by Mr. Glazman's testimony. Mr. Glazman testified that where a document is changed, its old version is over written on the server and replaced with the new version. However, the old version still exists on the back-up tapes. Thus, the backups were not purely duplicative.

Plaintiff's second argument, that the information on the backup tapes was not relevant because it would have dated from no earlier than January 2005 (*see* Opposition at 9) suffers from at least two fatal flaws. First, Plaintiff ignores the fact that it filed suit in September 2004 and first knew of its potential claims at least as early as January 2003. Therefore, had Plaintiff taken adequate steps to preserve documents, it would have been in possession of backup tapes dating back to 2002. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("The duty to preserve attached at the time that litigation was reasonably anticipated").

Second, Plaintiff incorrectly assumes that the information contained on the backup tapes "could not possibly be relevant to any issues in this case" because the patent was filed in March 1999. Opposition at 9. As described in Defendants' memorandum, the date on which a backup was done is not the same as the date of the materials contained on that backup tape. That is, if a document on the server had not been edited or altered since 1998 but was edited in 2005, then those 1998 documents would have been preserved on the backup tapes but not on the server. By destroying all of its backup tapes, BIS has avoided any possibility of searching the older materials for historic versions of its presentations, customer correspondence and/or software.

BIS's third argument, that it was not obligated to preserve information that was contained on the backup tapes because the backup was a "disaster recovery system" and "not an archive," is simply incorrect. Opposition at 9. Although the general rule is that a party "need not preserve

*Formatted:* Font: 8 pt
*Deleted:* LIBNY/4476737.1

all backup tapes even when it reasonably anticipates litigation," that rule does not apply when the backup tapes are the source of unique information. *Zubulake*, 220 F.R.D. at 217. Indeed, "anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." *Id.* If information is stored on backup tapes – even inaccessible backup tapes – then those tapes must be preserved once litigation is reasonably anticipated, and certainly after it has commenced. *See id.*

Finally, BIS's argument concerning its destruction of documents focuses on the backup tapes, and ignores the fact that BIS also made no effort to preserve the documents and software on its server as they existed at the time BIS reasonably anticipated this litigation, or even as of the time that BIS filed the complaint. BIS should be sanctioned for its blatant disregard of its duty to preserve evidence.

**C.     BIS's Inadequate Document Production**

   **1.     Software Project Files, Including Source Code and Software**

BIS continues to refuse to produce the software and source code for products that its own Rule 30(b)(6) witness testified are covered by the patent. Tr. at 44:14-24; 67:8-9 (Defendants' Memorandum, Ex. J). Indeed, that witness testified that BIS gathered the materials and provided them to the attorneys in response to the document requests, demonstrating that BIS concedes that this material is responsive, even if its attorneys do not. Tr. at 81:6-11 (McConchie Aff., Ex. A). Ignoring its witness's testimony, BIS argues that it should not be compelled to produce the source code and software for two reasons, neither of which is persuasive.

First, BIS argues that the source code is not relevant because only the current version, and not the version that existed at the time of the patent application, still exists. This argument ignores the testimony that the current version is a direct descendant of the first prototypes of the

software, and that some portions of even the current software may be "quite old." Tr. at 63 (McConchie Aff, Ex. A), Tr. at 68[1] (Defendants' Memorandum at Ex. J). More importantly, if BIS is correct that it may be shielded from producing any version of its software or source code because, in its opinion, only versions that it has destroyed would have been relevant, it would encourage destruction of relevant materials prior to litigation.

Second, BIS argues that the commercial embodiment of its invention should not be produced because it is not relevant to an infringement analysis. Opposition at 4. Because BIS has described its products in deposition and in marketing literature as being covered by the '239, the products are, at a minimum, evidence relevant to BIS's understanding of the scope and meaning of the patent that it accuses Defendants of infringing and should be produced for that reason as well. BIS also ignores the fact that the details of this product are relevant to damages. BIS may try to claim lost sales damages under 35 U.S.C. § 284, and whether its product was functionally the same as Red Bend's will be an issue for such a claim.

### 2.    Foreign Counterparts

As Plaintiff notes, it has agreed to produce prosecution history files, including the files for any foreign counterparts. However, Plaintiff's production contains none of the documents that should exist concerning the counterparts.

Plaintiff asserts that the statement about BIS's 37 patents in Plaintiff's marketing material is incorrect. Without specifically saying so, BIS's tries to give the impression there are no counterparts. Yet, this is an improper deception; there may not be 37 counterparts, but a simple search on the internet reveals at least three foreign counterparts to the '239 patent in issue

---

[1] Defendants cannot, at this time, identify whether it is possible to tell from the software itself which portions may be from the original prototypes, because BIS's counsel instructed the witness not to answer a question on this topic. Tr. at 63-64 (McConchie Aff, Ex. A). Whether or not it is possible to tell from the software alone,

**Formatted:** Font: 8 pt
**Deleted:** LIBNY/4476737.1

(identified as Australian Patent Application No. AU33217/00, PCT Patent No. WO0057272, and European Patent Application No. EP1080409) (*See* Exhibit A).  Plaintiff has not produced any documents that clearly exist concerning these patents, such as the applications, any correspondence with the foreign patent offices, any foreign search reports, or any other ancillary documents concerning the prosecution of these foreign counterparts.

### 3. Customer Files And Accounting Files

Once again, Plaintiff asserts that it has produced all "relevant" customer and accounting files, but the documents that were actually produced do not contain documents that should exist.  For example, Plaintiff has produced no invoices, no records of payments from customers, no detailed accounting statements, and no tax information.  These documents were not produced, despite Plaintiff's Rule 30(b)(6) witness conceding that these documents would have been in the accounting and customer files.

### 4. E-mail Attachments

In its opening memorandum, Red Bend argued that e-mails were produced without attachments and pointed to testimony by BIS' 30(b)(6) witness that if e-mails exist, then the attachments to those e-mails also still exist.  Red Bend gave an example in e-mail with Bates number BIS 011683.

BIS argued without support – no affidavit, declaration or deposition support – that the attachment to this one example was corrupted.

Yet, BIS gives no details of what "corrupted" means and whether it made any attempt to bring in professionals to "un" corrupt it.  Further, this one e-mail is but one example and BIS does not even make a representation that the attachments to the other e-mails are corrupt.  Such

---

Defendants need the source code and software to have any possible opportunity to adequately question witnesses about the functionality of the Transfast product prior to March 22, 1998.

**Formatted:** Font: 8 pt
**Deleted:** LIBNY/4476737.1

other e-mails include at least Bates numbers BIS 006670, BIS011682, BIS011688, BIS012899 and BIS018156.

**D.    Plaintiff's Document Search Was Inadequate**

Plaintiff admits that it did not search certain files, including the programmers files, but asks Defendants and the Court to simply accept – again with no support - that nothing responsive could be on the programmers' computers. Mr. Glazman testified that each of the programmers at BIS works on all BIS products, which necessarily includes the three that are covered by the '239 patent. Tr. at 123 (Defendants' Memorandum, Ex. J). All that Defendants have asked is that Plaintiff actually search those computers to determine whether Mr. Glazman's belief that there is nothing responsive on the programmers' computers is, in fact, correct, and if it is not, that Plaintiff produce the responsive documents.

**E.    Sufficiency of the Rule 37.1 Conference**

Defendants disagree with BIS's assertion that the motion was not adequately conferenced. On September 28, 2005, counsel for Defendants spoke with counsel for Plaintiff by telephone and provided a detailed list of Defendants' discovery concerns. Defendants made follow-up inquiries and waited three weeks after the first conference to file a motion to compel. *See* Rule 7.1 and 37.1 Certification (Defendants' Motion at 3).

Moreover, although BIS complains that Defendants should have waited even longer for a response, BIS's response makes clear that further delay would have made no difference. BIS continues to refuse to produce clearly relevant information, such as the source code and software for the products embodying the claims of the '239 patent. BIS also maintains that it has produced all relevant documents, such as all foreign prosecution files and financial documents, when that is clearly not the case. Moreover, BIS continues to refuse to produce an adequate Rule

8

30(b)(6) witness at a reasonable time and place **prior** to the substantive depositions that are to take place in Israel.[2] Finally, BIS takes the position that its undisputed destruction of documents was of no consequence. In light of BIS's positions, it is obvious that none of the issues that Defendants raised during the September 28, 2005 telephone conference would have been resolved without resort to the Court.

**F.    The Requested Sanctions Are Appropriate**

As discussed in detail above and in Defendants' memorandum, Plaintiff insisted that the Rule 30(b)(6) deposition take place at a date and place chosen by Plaintiff, requested that a translator be present, then produced an unprepared Rule 30(b)(6) deponent who needed no translation. Plaintiff, and not Defendants, should bear the cost of that deposition. In addition, in light of their discovery stonewalling, failure to produce an adequate witness, and refusal to produce relevant documents, Plaintiff should bear the costs incurred by Defendants in making this motion.

In addition, in light of Plaintiff's continued destruction of documents after commencement of litigation, Plaintiff should be precluded from (1) offering any evidence that the invention claimed in the '239 patent was not "on sale" in this country under 35 U.S.C. § 102(b) prior to March 22, 1998; and (2) offering any evidence that the product on sale as "Transfast" prior to March 22, 1998 did not encompass all elements of the independent and dependent claims of the '239 patent.

---

[2]    Defendants note that, in light of the February 3, 2006 close of fact discovery, Defendants proposed to BIS that the parties schedule the substantive depositions (which, by agreement, will take place in Israel) for the weeks of December 5 and 12. As of the date of this reply, Defendants have heard no response to that proposal.

WHEREFORE, for the reasons set forth above and in Defendants' initial memorandum in support of their Motion to Compel Production of Documents and a Proper Rule 30(b)(6) Witness and For Sanctions, Defendants respectfully request that this Court grant its Motion.

          **RED BEND SOFTWARE, INC., RED BEND, LTD., ICQ, INC. and INSTALLSHIELD SOFTWARE CORP.**

          /s/ Anastasia Fernands
          Brenda R. Sharton (BBO # 556909)
          Miguel C. Danielson (BBO # 651288)
          GOODWIN PROCTER LLP
          53 State Street
          Boston, MA 02109
          Tel:  617-570-1000
          Fax: 617-523-1231

          Ethan Horwitz (*pro hac vice*)
          Anastasia Fernands (BBO# 633131)
          GOODWIN PROCTER LLP
          599 Lexington Avenue
          New York, New York 10022
          Tel:  212-813-8800
          Fax: 212-353-3555

Dated: November 15, 2005

**Formatted:** Font: 8 pt
**Deleted:** LIBNY/4476737.1