IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BIS ADVANCED SOFTWARE SYSTEMS, LTD.,

    Plaintiff,

    v.

RED BEND SOFTWARE, INC.,
RED BEND, LTD.,
TIME WARNER INC.,
ICQ, INC.
INSTALLSHIELD SOFTWARE CORP.,
and
SCANSOFT, INC.

    Defendants.

Civil Action No. 04cv11960 (RWZ)

## RED BEND'S OPPOSITION TO BIS'S MOTION TO DISMISS

    Defendants Red Bend Software, Inc. and Red Bend, Ltd. (collectively "Red Bend") submit this brief in Opposition to Plaintiff's Motion To Dismiss With Prejudice (the "Motion"). Red Bend does not object to dismissing BIS's complaint with prejudice. However, it does oppose dismissal of its declaratory judgment counterclaims.

    After having been caught violating this Court's order to produce a Rule 30(b)(6) witness, failing to properly produce documents, and even destroying documents, BIS was facing a motion to compel and for sanctions. To escape these procedural problems, BIS now wants to end this action. BIS has little risk to do so, because most of Red Bend's sales are in the future and are for updated software, so BIS can almost immediately refile this case and start over, avoiding its procedural difficulties.

BIS's motion should be denied. This Court still has jurisdication over Red Bend's counterclaims, and BIS should not be permitted to avoid its violations of discovery, destruction of documents and this Court's orders only to sue another day.

Red Bend's counterclaims concern an actual case or controversy. Specifically, Red Bend has continually updated its software and currently has such updates in the works. Further, Red Bend has a new product it is marketing and plans to launch in 2006. These updated and new products are not covered by BIS's offer of dismissal. Lastly, BIS has threatened Red Bend customers, and has specifically not included all these threatened customers in its offer of dismissal. Thus, Red Bend faces a continuing threat from BIS's patent that requires resolution.

In addition, BIS had made it clear that the end of this specific lawsuit is not the end of the dispute, rather, just the end of round one. BIS wants to dismiss this case so that it can refile without suffering the effects of Red Bend's motion to compel and for sanctions. This Court has discretion as to whether to allow the dismissal and should exercise that discretion to deny it.

## BACKGROUND

### A.      History Of This Action

Having threatened Red Bend with infringement in 2003 (*see* Memorandum in Support of Defendants' Motion to Compel Production of Documents and a Proper Rule 30(b)(6) Witness and For Sanctions (filed under seal), Exhibit M), BIS waited to bring this action until Red Bend was in the middle of a round of financing. *See* Declaration of Yoram Salinger ("Salinger Decl.") at ¶2.[1] BIS has consistently pursued this action with such intimidation, rather than concentrating on the merits.

---

[1] Because the Salinger Declaration contains highly confidential business information, Red Bend has filed a motion seeking leave to file it under seal. Should the Court allow that motion to file under seal, Red Bend will then file the Salinger Declaration accordingly.

First, after admitting that the addition of more of Red Bend's customers did not add to the litigation (*See* D.I. 51 at 2), BIS threatened to add Red Bend customers to the litigation as soon as initial settlement discussions broke off. Salinger Decl. at ¶4. When Red Bend was able to repair the damaged relations with its customers so that BIS's threats did not force Red Bend to capitulate (*id.*), BIS wrote again to customers and filed a motion to amend the complaint to add such customers. D.I. 33. After that motion was denied (D.I. 48), BIS asked the Court to reconsider. *See* D.I. 49.

In its request for reconsideration, BIS represented that such customers should be added as defendants in this litigation because "they are direct infringers of method claims." *See* D.I. 50 at 5. BIS further argued that it should be allowed to add the proposed new defendants "in order to recover for the direct infringement of its patented methods by the customers of Defendants Red Bend Software Ltd. and Red Bend Software Inc." *Id*.

In discovery, BIS has attempted to press Red Bend into settlement by complicating this case, forcing Red Bend to spend money while at the same time BIS avoided spending money by not engaging in a proper document production, and by cancelling depositions.

BIS has forced Red Bend to spend time and effort dealing with BIS's demands for such things as producing documents that do not exist from a party that is out of business. *See* D.I. 43 at 13. Instead of properly trying to resolve these discovery issues, BIS made a premature motion to compel. D.I. 35. Red Bend was forced to respond to this motion by pointing out that its production was proper (*See* D.I. 44) and that it was in fact BIS that was shirking its discovery responsibilities and trying to cover it up with a motion to compel. The result of the flurry of BIS's motions was for the Court to order BIS to produce a Rule 30(b)(6) witness about its own production. D.I. 48.

The Court also requested the parties to work out the complaints BIS had brought. *See* D.I. 48. When the motion to compel did not pressure a settlement, BIS essentially walked away from its complaints about Red Bend's production.[2]

While pressing Red Bend for more documents, BIS's document production was clearly insufficient; in fact, even documents BIS gave its attorneys for production were never produced to Red Bend. *See* Memorandum in Support at 5-6. BIS's original production included only 1,427 pages of documents, most of which were publicly available at the USPTO. *See* D.I. 43, Exhibit E. BIS represented this was a complete production, but after repeated requests by Red Bend and only after July 7, 2005, BIS produced more than 16,000 additional pages of documents. D.I. 43, Exhibit I. The production was still woefully incomplete, and Red Bend noticed a Rule 30(b)(6) deposition to explore BIS's production. BIS, however, unilaterally cancelled that deposition and all others that were scheduled. *See* Memorandum in Support, Exhibit F. Eventually, this Court ordered a Rule 30(b)(6) deposition of BIS on its document production. *See* D.I. 48.

At the Rule 30(b)(6) deposition it was revealed that:

(1) the Rule 30(b)(6) witness only had limited knowledge and was not a proper witness;

(2) even with limited knowledge, the witness knew of documents he supplied to BIS attorneys which were not produced; and

(3) key documents were destroyed by BIS after the start of the litigation.

---

[2] The only additional documents that Red Bend has since produced were certain documents containing third-party confidential information that Red Bend already agreed to produce as soon as it received the appropriate permission from the third parties.

**Formatted:** Font: 8 pt
**Deleted:** LIBNY/4487928.2

*See* Memorandum in Support. A more complete recitation of the history of discovery is found in Defendants' Opposition to Plaintiff's Motion to Compel Disovery (D.I. 43) and the Memorandum in Support of Defendants' Motion to Compel and for Sanctions, which was submitted under seal. When Red Bend filed a motion to compel discovery from BIS, it also moved for sanctions against BIS for violating the Court's order to produce a Rule 30(b)(6) witness and for destroying documents. D.I. 53 at 2.

Immediately after the filing of this motion, BIS, not surprisingly, began negotiations to settle this action (Salinger Decl. at ¶7). When negotiations stalled, BIS made the current Motion to withdraw this action. D.I. 60.

**B.      Red Bend and Its Products**

Red Bend is a privately held, venture capital financed company. Red Bend specializes in software that updates existing programs; this is precisely the area to which the patent is directed. The object of these types of software is to avoid the need to replace an entire program and just send the updates to existing programs. Salinger Decl. at ¶8.

Historically, Red Bend sold its software to companies that send programs over the internet. So, for example, if a customer had version 5.3 of iTunes software and requested to be upgraded to version 5.4, Red Bend software could be used to create an update file. That update file is then sent to the customer and its existing 5.3 version is changed to 5.4, avoiding the need to replace the entire program. Id.

More recently, Red Bend has developed advanced solutions for updating software and "firmware" on mobile devices, such as cellular telephones. "Firmware" is built into a hardware device such as a computer, digital camera or mobile phone. Red Bend's firmware over-the-air (FOTA) solutions allow for firmware updates that can be delivered cost-effectively and reliably.

In other words, the Red Bend FOTA technology allows a company to update software that is stored within mobile devices without any need for the user to return the device to the service provider. Instead, the update is delivered efficiently and conveniently "over-the-air". Id.

Red Bend periodically modifies its existing products and "releases" the updated version. For example, in October 2005 Red Bend released a new version of its vCurrent Mobile product, the product at issue in this action. This new version is considered a "major" release. Red Bend's typical practice is to have one or more major release and two or more interim releases during the course of any year. In the immediate future, Red Bend plans to release two new versions of vCurrent Mobile ("major" releases) in 2006. Red Bend further anticipates based on past experience that there will be interim, minor releases during the same period. Salinger Decl. at ¶12. These new versions are currently being developed by Red Bend. Id..

In addition, Red Bend is well into developing a new set of products for mobile phone and other mobile devices. The details of this product are in the Declaration of Salinger, which is being filed under seal because those details are highly confidential. However, the new product has already been marketed to potential customers and is expected to be sold in 2006. Red Bend has hired and continues to hire new employees to work on this new product and its marketing. While the functionality of this product is different than the existing mobile products, it is based on the same principles of updating. Id.

## ARGUMENT

When Red Bend answered BIS's Complaint, it appropriately asserted declaratory judgment counterclaims seeking a declaration that the '239 patent was both invalid and not infringed. *See* D.I. 9. In this Motion, BIS argues that its proposed agreement not to sue any "Defendant named in this action for infringement" of the '239 patent "based upon the software

products and services currently manufactured, sold, and licensed" by Red Bend in the United States moots the controversy and divests this Court of jurisdiction over the declaratory judgment claims. BIS's cursory argument is incorrect.

**A.     An Active Case Or Controversy Continues Between The Parties.**

This Court had declaratory judgment jurisdiction when this action began and will still have such jurisdiction even with BIS's proposed agreement for at least three separate reasons. First, Red Bend's product is not stagnant, but is updated many times a year and Red Bend is currently working on such updates. Second, Red Bend is well into developing and about to market a new product. Neither the updated existing products nor the new products are covered by BIS's offer. Third, BIS's offer clearly excludes the many Red Bend customers that are not current defendants, but that are clearly at risk. Such customers are not covered by BIS's offer, and, in view of the fact that BIS tried to add some of them to this action, they are clearly at risk.

The Federal Circuit's general test for determining whether declaratory judgment jurisdiction exists in patent cases is:

> First, the [patentee's] conduct must have created on the part of the [accused infringer] a reasonable apprehension that the [patentee] will initiate suit if the [accused infringer] continues the allegedly infringing activity. Second, the [accused infringer] must actually have either produced the device or prepared to produce that device."

*See Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988) The Federal Circuit further explained that this test, as with most tests, must be "read, applied and modified in light of the facts" of the particular case. *Id.*

As to the first prong of the test, Red Bend had reasonable apprehension when this action began, and BIS's covenant is not nearly sufficient to assuage that reasonable apprehension and divest jurisdiction. BIS's covenant is limited to current products; BIS is well aware that software

7

products are updated regularly and Red Bend's document production shows that Red Bend's products are no different and are updated regularly.  Thus, Red Bend's "reasonable apprehension" continues, and BIS's very craftily worded limited covenant only adds to Red Bend's "reasonable apprehension" that this motion is only a tactical retreat by BIS, not a resolution of the problem.

As to the second prong, Red Bend has new software under development that is soon to be sold to customers.  Such software includes updates of existing products and new products, both of which are at risk of a claim of infringement.  BIS points to *Super Sack*, arguing that its offer is sufficient to divest jurisdiction.  However, in *Super Sack*, the Federal Circuit noted that "meaningful preparatory steps toward an infringing activity by planning to make a new product that may later be said to infringe" is sufficient for declaratory judgment jurisdiction.  Such preparatory steps meet the requirement "that the putative infringer's '*present* activity' place it at risk of infringement liability."  *Super Sack Mfg. Corp. v. Chase Pkg. Corp.*,  57 F.3d 1054, 1059 (Fed. Cir. 1995).

In *Super Sack* the putative infringer had taken no such meaningful steps; instead, there was nothing more than a "residual possibility of a future infringement suit based on [defendant's] future acts . . ." *Id.* at 1060.[3]  In stark contrast, Red Bend's software is constantly evolving, and Red Bend is already working to release two new versions of its existing product within the next year.  *See* Salinger Decl. at ¶12.  Indeed, substantial preparations for the next release have already been made.  *See id.*

---

[3]   The product in *Super Sack* was a receptacle (see Patent No. 4,143,769), not the kind of product that is regularly updated the way software is updated.  In *Super Sack*, a covenant that this specific product did not infringe was sufficient because it was the only product that was contemplated.

In addition, Red Bend has taken meaningful steps, including development and marketing, toward release of a new suite of products. Red Bend has hired and is continuing to hire new personnel to develop that software and market it. Red Bend expects that the new product will also be sold in 2006. *See* Salinger Decl. at ¶13. Red Bend further has a reasonable apprehension, based on BIS's allegations in this case and its behavior in settlement negotiations, that BIS will assert the '239 patent against this new Red Bend product suite.

Moreover, declaratory judgment jurisdiction continues to exist because BIS's proposed covenant does not extend to the Red Bend customers that are not parties to this action. It is not that such parties have not been threatened, in fact BIS has already tried to add many of them to this action. The Federal Circuit has acknowledged that, in circumstances such as these, it is appropriate for a court to recognize the realities of business life, and jurisdiction exists if the accused infringer "or its '*customers* face an infringement suit or *threat* of one.'" *Arrowhead,* 846 F.2d at 736 (citation omitted).

The Northern District of California's decision in *Synopsys, Inc. v. Ricoh Company, Ltd.*, 343 F.Supp. 2d 883 (N.D. Cal. 2003) is instructive here. In *Synopsys*, the patentee sued the manufacturer's customers for patent infringement and claimed the customers' use of the manufacturer's software was the accused infringing activity. *See Synopsys*, 343 F. Supp. 2d at 889. Similarly in this case BIS has threatened to sue a number of Red Bend's customers claiming those customers' use of Red Bend's software infringed the '239 patent. BIS's proposed limited covenant and the history of this action make clear that BIS intends to pursue Red Bend's customers. Accordingly, here, as in *Synopsys*, the threats against Red Bend's customers for alleged present infringement are sufficient to satisfy the case or controversy requirement for Federal Court jurisdiction, and this Court should not dismiss Red Bend's counterclaims.

BIS also cites *Intellectual Property*, 248 F.2d 1333 (Fed. Cir. 2001). In that case, the patent owner relieved defendant of all liability under the patent – past and future.[4] *Id*. at 1338. In addition, the Federal Circuit in *Intellectual Property* held only that declaratory judgment jurisdiction did not exist if a party "could *potentially* be required to indemnify" a customer. *Id.* at 1342 (emphasis added). However, citing to *Arrowhead* the Federal Circuit also specifically pointed out that "apprehension" could apply and jurisdiction could exist based on threats to customers. *Id*. at 1341 fn. 8. Moreover, as the court in *Synopsys* noted, neither *Super Sack* nor *Intellectual Property* included the issue of customer suits. 343 F. Supp. 2d at 889.

Here, there is no "potentially" to the customer threat. Unlike in *Intellectual Property*, BIS has threatened Red Bend customers. Also unlike in *Intellectual Property*, BIS has actually moved this Court to add Red Bend customers as defendants in this action. This is a very real threat as contemplated in *Arrowhead* and recognized in *Intellectual Property*.

Finally, this case presents precisely the type of problems that the Declaratory Judgment Act sought to alleviate – where a company and/or its customers have been threatened with the prospect of infringement liability and seek some security. *See Minnesota Mining and Manuf. Co. v. Norton Co.*, 929 F.2d 670, 673. (Fed. Cir. 1991). Under these circumstances, "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," it is appropriate for the Court to invest judicial time and resources in a declaratory action. *Id.* at 672-73. Conversely, to dismiss Red Bend's declaratory judgment

---

[4] The covenant included the following:

> "[TCI-California] has no liability to CPL or IPD or any successors-in-interest to the '202 patent for infringement of the '202 patent and CPL and IPD and any successors-in-interest to the '202 patent will not sue [TCI-California] for infringement of the '202 patent."

counterclaims at this stage, after extensive resources have been devoted to the litigation but while the threat of suit still looms large over Red Bend and its customers, risks the waste of the parties' and the Court's resources in duplicative actions in the future.

**B.    It Is Within This Court's Discretion To Exercise Declaratory Judgment Jurisdiction In This Case.**

This Court has discretion in whether to allow a declaratory judgment action. *See Minnesota Mining*, 929 F.2d at 672 ("the very terms of the Act and its subsequent interpretation by the courts have made the exercise of declaratory judgment jurisdiction discretionary"). Here, because BIS has made it clear that it is only withdrawing for strategic purposes and that this is only the end of round one, this Court should allow the case to continue.

BIS has made it clear that it does not want to end this entire dispute, only the current action; BIS is merely making a strategic retreat to regroup and attack again. And no wonder. BIS has been caught failing to produce documents, caught destroying documents and caught flaunting a court order to produce a Rule 30(b)(6) witness.[5] Giving up little in potential damages, (*See* Salinger Decl. at ¶15), BIS is attempting to withdraw this action, only to start again with a clean slate. This court should not permit such an inequitable result.

BIS brought this case knowing there was little chance to succeed on the merits and instead fought this case in the marketplace by interfering with Red Bend's financing, by threatening Red Bend's customers and by making this case complex so as to force Red Bend to spend money defending.[6] At the same time, BIS spent as little money on the litigation as it could

---

[5]    Producing an unprepared Rule 30(b)(6) witness is tantamount to a failure to appear. *See Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co., Inc.* 201 F.R.D. 33, 36 (D. Mass. 2001).

[6]    It is not clear whether BIS (or its attorneys) was merely negligent in its behavior or purposely set out to harass Red Bend so as to make this case expensive for Red Bend. Three factors lead to the conclusion that BIS purposely set out to harass Red Bend. The first is BIS's demands for documents from a non-existing company and its motion to compel on such issues. The second is BIS's actions forcing Red Bend to make a motion to compel production of documents, including key documents that BIS gave to its attorneys but that were never

– it did not even make the effort to produce documents properly, has cancelled Red Bend's depositions of its employees, and has not cooperated in Red Bend's effort to reschedule.

This Court should not permit BIS to withdraw, because to do so would send a clear message: You can bring a claim with little if any chance for success; you can destroy key documents; you can harass the defendant and its customers; you can force the defendant to spend significant sums by making the case complex and vexatious; you can even flout the court's orders. Finally, if the defendant does not succumb to this behavior and does not settle, you can avoid all consequences of your behavior: You can avoid sanctions for destroying key documents during a litigation; you can avoid Rule 11 and 35 U.S.C. § 285 (for attorney fees) sanctions; and you can even avoid sanctions for violating a court order. All you need to do is withdraw at the last minute. And, you still can regroup and fight again.

Surely this Court does not wish to send such a message. This Court should use its discretion to allow the case to proceed so Red Bend can lift this cloud from its business. To do otherwise would continue to expose Red Bend to BIS's "scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity." *See Arrowhead*, 846 F.2d at 735.

WHEREFORE, for the reasons set forth above Red Bend respectfully requests that this Court deny the portion of Plaintiff's Motion to Dismiss seeking dismissal of Red Bend's Declaratory Judgment counterclaims.

---

produced. The third is requiring a translator at the 30(b)(6) deposition when the witness spoke English perfectly well.

        **RED BEND SOFTWARE, INC., RED BEND, LTD., ICQ, INC. and INSTALLSHIELD SOFTWARE CORP.**

        /s/ Anastasia M. Fernands
        Brenda R. Sharton (BBO # 556909)
        Miguel C. Danielson (BBO # 651288)
        GOODWIN PROCTER LLP
        53 State Street
        Boston, MA 02109
        Tel:  617-570-1000
        Fax: 617-523-1231

        Ethan Horwitz (*pro hac vice*)
        Anastasia Fernands (BBO# 633131)
        GOODWIN PROCTER LLP
        599 Lexington Avenue
        New York, New York 10022
        Tel:  212-813-8800
        Fax:  212-353-3555

Dated:  December 15, 2005

LIBNY/4487928.2