Westlaw. Case 1:04-cv-11960-RWZ   Document 68-2   Filed 03/31/2006   Page 1 of 7   EXHIBIT A

2006 WL 626075                                                                                       Page 1
--- F.3d ----, 2006 WL 626075 (Fed.Cir.(Ariz.))
(Cite as: 2006 WL 626075 (Fed.Cir.(Ariz.)))

**Briefs and Other Related Documents**

Only the Westlaw citation is currently available.

United States Court of Appeals,
Federal Circuit.
MICROCHIP TECHNOLOGY INCORPORATED,
Plaintiff-Appellee,
v.
THE CHAMBERLAIN GROUP, INC., Defendant-Appellant.
No. 05-1339.

March 15, 2006.

**Background:** Microprocessor manufacturer brought action against patentee, seeking declaration that its patents for garage door openers were invalid or unenforceable. The United States District Court for the District of Arizona, Susan R. Bolton, J., entered summary judgment in favor of manufacturer, and patentee appealed.

**Holding:** The Court of Appeals, Lourie, Circuit Judge, held that manufacturer's apprehension that its customers would be sued by patentee for infringement of garage door opener patents did not satisfy the "reasonable apprehension of suit" required for exercise of declaratory judgment jurisdiction.

Vacated and remanded.

**[1] Courts** 96(7)

106k96(7) Most Cited Cases
Federal Circuit law governs Court of Appeals' review as to whether an actual controversy exists under the Declaratory Judgment Act when the underlying merits of an action involve patent infringement and/or validity. 28 U.S.C.A. § 2201.

**[2] Declaratory Judgment** 393

118Ak393 Most Cited Cases
Court of Appeals reviews de novo a district court's determination whether an actual controversy exists under the Declaratory Judgment Act. 28 U.S.C.A. § 2201.

**[3] Declaratory Judgment** 234

118Ak234 Most Cited Cases
Microprocessor manufacturer's apprehension that its customers would be sued by patentee for infringement of garage door opener patents did not satisfy the "reasonable apprehension of suit" requirement for exercise of declaratory judgment jurisdiction in manufacturer's action seeking declaration that the patents were invalid or unenforceable; manufacturer failed to identify any legal claims that it believed patentee could have brought against it in the absence of its declaratory judgment action, and had never been accused of infringing the patents. 28 U.S.C.A. § 2201(a).

**[4] Declaratory Judgment** 61

118Ak61 Most Cited Cases
Under either Federal Circuit or Ninth Circuit law, there must be an actual controversy to sustain declaratory jurisdiction on the merits. 28 U.S.C.A. § 2201(a).

**[5] Declaratory Judgment** 232

118Ak232 Most Cited Cases

**[5] Declaratory Judgment** 234

118Ak234 Most Cited Cases

**[5] Declaratory Judgment** 345.1

118Ak345.1 Most Cited Cases
Microprocessor manufacturer's claim that patentee denied it "patent peace" in violation of parties' settlement agreement by taking the position that the settlement agreement did not apply to two reissue patents did not establish actual controversy necessary of declaratory jurisdiction to interpret settlement agreement, absent evidence that manufacturer or its customers possessed a reasonable apprehension of suit under those patents. 28 U.S.C.A. § 2201(a).

**Patents** 328(2)

291k328(2) Most Cited Cases
4,750,118. Cited.

**Patents** 328(4)

291k328(4) Most Cited Cases
35,364, 36,703, 37,986. Cited.

Brett L. Dunkelman, Osborn Maledon, P.A., of Phoenix, Arizona, argued for plaintiff-appellee. With him on the brief was Danielle Janitch.

Karl R. Fink, Fitch, Even, Tabin & Flannery, of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Chicago, Illinois, argued for defendant-appellant. With him on the brief were John F. Flannery and Rudy I. Kratz.

Before LOURIE, RADER, and LINN, Circuit Judges.

LOURIE, Circuit Judge.

**\*1** The Chamberlain Group, Inc. appeals from the decision of the United States District Court for the District of Arizona granting summary judgment in favor of Microchip Technology Inc., and holding that: (1) U.S. Patent Re. 36,703 was invalid; (2) equipment other than garage door openers could not infringe U.S. Patent Re. 35,364; and (3) Microchip possessed a patent license under all reissues of U.S. Patent 4,750,118, including U.S. Patent Re. 37,986. *Microchip Tech. Inc. v. The Chamberlain Group, Inc.,* No. 01-1423, slip op. at 17 (D.Ariz. Jan. 27, 2005) ("*Final Decision* "). However, because the district court lacked jurisdiction under the Declaratory Judgment Act to decide the merits of this action, we vacate the district court's grant of summary judgment and remand with instructions for the district court to dismiss the action.

## BACKGROUND

The central issue on appeal is whether the district court possessed the requisite jurisdiction for it to decide the merits of this declaratory judgment action. That determination was based on whether a case of actual controversy existed between Microchip and Chamberlain. The district court held that there was such a controversy and proceeded to decide the merits of the case. The declaratory plaintiff-appellee is Microchip, a manufacturer of integrated circuits, such as microprocessors. A microprocessor is, in its most basic form, a circuit that is embedded in a semiconductor chip and is capable of processing inputted electronic signals and performing electronic functions in response to those signals. Microchip sells its microprocessors to manufacturers of various products, including garage door openers ("GDOs"). Manufacturers of GDOs install the microprocessors that they purchase from Microchip in the GDO, in combination with several other structural and electronic components.

In addition to manufacturing microprocessors, Microchip provides software that can be used to program the microprocessors to perform specified functions. Of particular interest to manufacturers of GDOs, and to this appeal, is Microchip's KEELOQ ® technology. A microprocessor programmed with the KEELOQ ® software enables the GDO to automatically recognize or "learn" the opening code contained in a remote transmitter. As a result, the GDO user is not required to manually input into the microprocessor of the GDO the opening code contained in the remote transmitter, which may be long. The GDO manufacturer, moreover, is not required to program the Microchip microprocessor with the KEELOQ ® software. It may choose to purchase Microchip's microprocessor alone and program the microprocessor with its own or a third-party's "learning" software.

The declaratory defendant-appellant is Chamberlain, a manufacturer and seller of GDOs. Chamberlain is the owner of the '118, '364, '703, and '986 patents (collectively, "the patents-in-suit"). The '364, '703, and '986 patents are reissues of the '118 patent. The patents-in-suit have a common specification, which discloses a GDO that uses a remote transmitter with a unique and permanent code and a receiver that can be placed into a program mode. '118 Patent, col. 1, ll. 34-39. In the program mode, the receiver is capable of receiving and storing two or more opening codes corresponding to two or more remote transmitters. *Id.* According to the '118 patent specification, the coding system of the patented GDO is easier to use than a conventional GDO because the user does not have to manually input opening codes into the receiver or the transmitter. *Id.,* col. 1, ll. 52-54. Moreover, because the factory-installed opening codes in the remote transmitter of the patented GDO can be long and complex, it is more secure than a conventional GDO. *Id.* A conventional GDO cannot practically have an opening code that is too long or complex since the user must manually input the code, and the GDO must provide switches on its central processing unit that allow the user to input the code. Claim 1 of the '118 patent, in pertinent part, defines the various components comprising the patented GDO:

> **\*2** A garage door operator for a garage door comprising ... [1] an output shaft connected to said garage door ... [2] a radio receiver, [3] a decoder connected to receive the output of said radio receiver, [4] a microprocessor connected to receive the output of said decoder and to said garage door operation mechanism to energize it, [5] a switch moveable between program and operate positions connected to said microprocessor ... [6] a memory means for storing a plurality of addresses ... [7] a memory selection switch connected to said microprocessor, [8] a plurality of radio transmitters with different codes ....

*Id.,* col. 5, l. 7 to col. 6, l. 6. As indicated above, Microchip sells microprocessors and software, not

GDOs.

Prior to the commencement of this action, Chamberlain and Microchip were engaged in another patent suit not involving the present patents-in-suit. In 1998, Microchip sued Chamberlain for infringement of its patent that purportedly covered the KEELOQ ® technology. Effective August 1, 1999, the parties entered into a settlement agreement that ended that lawsuit. Under the terms of the settlement agreement, Chamberlain received a license to certain of Microchip's patents, and Chamberlain promised not to bring suit against Microchip or its affiliates for infringement of the '118 and '364 patents. Relevant to this action, paragraph 5.09(c) of the settlement agreement provides as follows:

> Under no circumstance shall the foregoing release be construed as a release of Microchip, its present Affiliates or any customers thereof with respect to claims arising out of or relating to [Chamberlain's] U.S. Patent No. 4,750,118 and U.S. Patent No. Re. 35,364 (the foregoing CGI patents are thereinafter referred to as the "CGI Patents"). The foregoing sentence notwithstanding, CGI, and its present and future Affiliates, hereby agrees that it will not bring suit against Microchip or Microchip's current Affiliates involving any of the CGI Patents.

On July 31, 2001, Microchip filed its complaint in this action. On July 25, 2002, Microchip filed an amended complaint. In the amended complaint, Microchip sought a declaration that (1) the '364 and '703 patents were invalid and/or unenforceable, (2) Microchip's products did not infringe either the '364 or '703 patent, and (3) due to the prior settlement agreement between Chamberlain and Microchip, which purportedly constituted a patent license to the '118 patent and all reissues of that patent, Chamberlain could not enforce the '364 and '703 patents against Microchip's customers because of the doctrine of patent exhaustion. In response, Chamberlain filed a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

The district court concluded that there was a case of actual controversy and hence jurisdiction for it to decide the merits of the suit under the Declaratory Judgment Act. According to the court, although Microchip itself was not threatened with suit, Chamberlain had initiated lawsuits against Microchip's customers for the sale of GDOs that incorporated Microchip's microprocessors and learning software. *Microchip Tech. Inc. v. The Chamberlain Group, Inc.,* No. 01-1423, slip op. at 3 (D.Ariz. Jan. 11, 2002) ("*Jurisdiction Decision*"). In reaching its conclusion, the court was not persuaded by the fact that Microchip's microprocessors were not alleged to infringe the patents-in-suit and that Microchip's customers could only infringe the patents-in-suit by using Microchip's microprocessors in combination with other components not supplied by Microchip. *Id.* Ultimately, the court reasoned that the "practical effect" of Chamberlain's conduct was that Microchip could not sell its noninfringing product without subjecting its customers to the threat of a patent infringement suit. *Id.,* slip op. at 4. Thus, the court concluded that Microchip perceived a real threat of suit for patent infringement from Chamberlain, even though Microchip itself had no potential liability as a patent infringer. *Id.*

*3 Chamberlain filed a renewed motion to dismiss after it settled a concurrent patent suit against one of Microchip's customers, Wayne-Dalton Corporation. Wayne-Dalton is a GDO manufacturer that utilizes Microchip's microprocessor programmed with the KEELOQ ® software. In denying the renewed motion, the district court reiterated that its initial decision "was based on [Microchip's] reasonable apprehension that it cannot sell its allegedly non-infringing product without subjecting its customers, or itself, to the threat of litigation for patent infringement." *Microchip Tech. Inc. v. The Chamberlain Group, Inc.,* No. 01-1423, slip op. at 3 (D.Ariz. July 3, 2002). According to the court, because Chamberlain had not agreed not to sue Microchip's other customers for patent infringement, Microchip still retained a reasonable apprehension that its customers would be exposed to legal action. *Id.*

Subsequently, the district court granted Microchip's motions for summary judgment, and held that: (1) the '703 patent was invalid; (2) equipment other than garage door openers could not infringe the '364 patent; and (3) Microchip possessed a license to all reissues of the '118 patent, including the '986 patent. *Final Decision,* slip op. at 17. The court dismissed the other aspects of Microchip's amended complaint. *Microchip Tech. Inc. v. The Chamberlain Group, Inc.,* No. 01-1423 (D.Ariz. March 8, 2005).

The district court entered final judgment on March 8, 2005. *Id.* Chamberlain timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

[1][2] Federal Circuit law governs our review as to

whether an actual controversy exists under the Declaratory Judgment Act when the underlying merits of an action involve patent infringement and/or validity. *Medimmune, Inc. v. Centocor, Inc.,* 409 F.3d 1376, 1378 (Fed.Cir.2005) (citations omitted). We review *de novo* a district court's determination whether an actual controversy exists under the Declaratory Judgment Act. *Id.*

On appeal, Chamberlain argues that there was no actual controversy between it and Microchip because Microchip never possessed a reasonable apprehension of being sued for patent infringement. Thus, according to Chamberlain, the district court should have granted its motion to dismiss for lack of declaratory judgment jurisdiction. Chamberlain acknowledges that it was involved in several prior law suits against Microchip and other GDO manufacturers for patent infringement. Nonetheless, while it had several opportunities to do so in those suits, it never accused Microchip's microprocessors or its KEELOQ ® technology of infringing the patents-in-suit. Moreover, Chamberlain submits that the parties' 1999 settlement agreement, which contains a covenant not to sue on the '118 and '364 patents, confirms that Microchip never possessed a reasonable apprehension of suit. Citing our decision in *Metabolite Laboratories, Inc. v. Laboratory Corp. of America Holdings,* 370 F.3d 1354, 1369 (Fed.Cir.2004), Chamberlain asserts that "a covenant not to sue deprives a court of declaratory judgment jurisdiction." Chamberlain also contends that Microchip had no "adverse legal interest" in this action (presumably because it had not been threatened with any patent infringement suit), and that Microchip's economic interest alone could not give rise to an "actual controversy."

*4 Furthermore, Chamberlain assigns error to the district court's reliance on Chamberlain's past litigation history as supporting declaratory jurisdiction. According to Chamberlain, it has threatened only one Microchip customer that uses the KEELOQ ® technology, Wayne-Dalton Corporation, with a patent infringement suit. Chamberlain asserts that it settled its dispute with Wayne-Dalton prior to the disposition of this action. Because it had not threatened any other Microchip customer that uses the KEELOQ ® technology with a patent infringement suit, Chamberlain contends that the court should have dismissed this action once the Wayne-Dalton suit was settled.

Microchip responds that Chamberlain did not have to threaten it with a patent infringement suit in order for the district court to possess declaratory judgment jurisdiction. Instead, Microchip contends that a manufacturer may bring a declaratory judgment action against a patentee in response to the patentee's threats or initiation of patent infringement litigation against the manufacturer's customers. As support for its position, Microchip cites case law from various circuits, including our own, *e.g., Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731 (Fed.Cir.1988), that have allowed a manufacturer of a product accused of infringement to maintain a declaratory judgment action even though the patentee threatened only the manufacturer's customers with a patent suit. Microchip also reiterates the district court's basis for its decision that the "practical effect" of Chamberlain's actions is "that Microchip cannot sell its allegedly non-infringing product without subjecting its customers to the threat of litigation for patent infringement."

Microchip also disagrees with Chamberlain that its settlement with Wayne-Dalton extinguished any basis for the district court's declaratory jurisdiction. According to Microchip, it is irrelevant that Chamberlain settled its dispute with Wayne-Dalton because there was no covenant in that agreement not to sue Microchip's other customers that use the KEELOQ ® technology. On the contrary, although the agreement may have settled matters with Wayne-Dalton, Microchip asserts that Chamberlain continued to threaten other KEELOQ ® technology customers with patent infringement. In order to divest a federal court of jurisdiction over a declaratory judgment action, Microchip maintains that Chamberlain must file in the court a covenant not to sue any of Microchip's actual or prospective customers on the patents-in-suit, which it has not done.

In addition, Microchip contends that its disagreement with Chamberlain regarding the proper interpretation of paragraph 5.09(c) of the settlement agreement provides a basis for declaratory judgment jurisdiction separate from its claims arising under the patent laws. According to Microchip, by agreeing to include paragraph 5.09(c) in the settlement agreement, it bargained for "patent peace" with Chamberlain. Microchip argues that Chamberlain's interpretation of paragraph 5.09(c), *viz.,* that reissues of the '118 patent other than the '364 patent do not fall within the scope of the settlement agreement, denies it "patent peace." Although Microchip concedes that Chamberlain has not threatened it with litigation regarding the proper interpretation and application of paragraph 5.09(c), Microchip contends

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that the deprivation of "patent peace" alone constitutes a "live dispute" between the parties providing the court with declaratory judgment jurisdiction.

*5 [3] We agree with Chamberlain that the district court erred in concluding that declaratory judgment jurisdiction existed in this case. The Declaratory Judgment Act provides, in pertinent part, that: "In a case of actual controversy within its jurisdiction ... [a court] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a) (2000). We have articulated a two-part test to determine whether an "actual controversy" exists in actions involving a claim for a declaration of patent invalidity or noninfringement. Under that test, the declaratory plaintiff must establish both (1) a reasonable apprehension that it will face a patent infringement suit if it commences or continues the activity at issue, and (2) present activity by the declaratory plaintiff that could constitute infringement, or concrete steps taken by the plaintiff with the intent to conduct such activity. Medimmune, 409 F.3d at 1379 (citations omitted). Only the first criterion is at issue here.

Regarding that first criterion, viz., whether Microchip possessed a reasonable apprehension of being sued for patent infringement, it is clear that Microchip did not possess the requisite apprehension. In fact, Microchip does not seriously contest Chamberlain's assertion that Microchip did not have any apprehension of itself being sued for patent infringement, much less a reasonable one. In neither its original nor its amended complaint did Microchip aver that it had a reasonable apprehension of facing a patent infringement suit from Chamberlain. On the contrary, Microchip's general counsel admitted in her deposition that Microchip believed it had "patent peace" with respect to the patents-in-suit given the parties' 1999 settlement agreement, supporting Chamberlain's argument that the settlement agreement was a covenant not to sue that would divest the court of jurisdiction. Moreover, Microchip's brief to this court states that it "had a reasonable apprehension that ... it might thereby subject [its] customers to a patent infringement lawsuit by Chamberlain," not that it had a reasonable apprehension of being sued as a patent infringer.

What is essentially at issue in this appeal is whether Microchip's purported apprehension of its customers being sued satisfies the first criterion for declaratory judgment jurisdiction. We conclude that that apprehension, absent any "adverse legal interest" existing between Microchip and Chamberlain, does not meet that test. Furthermore, we do not agree with the district court's observation that because the "practical effect" of Chamberlain's actions was that Microchip could not sell its product without subjecting its customers (but not itself) to the threat of a patent infringement suit, the first criterion was met.

*6 In Medimmune, we recognized that "the question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 409 F.3d at 1379 (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)) (emphasis added); see also C.R. Bard, Inc. v. Schwartz, 716 F.2d 874 (Fed.Cir.1983) (a justiciable controversy requires a real and substantial dispute affecting the legal rights and obligations of parties having adverse interests). Moreover, in BP Chemicals Ltd. v. Union Carbide Corp., we stated that the purpose of the Declaratory Judgment Act was to enable a person who is at legal risk because of an unresolved dispute to obtain judicial resolution of that dispute without having to await the commencement of a legal action by the patentee; to "clear the air." 4 F.3d 975, 977 (Fed.Cir.1993).

The concepts of "adverse legal rights" and "legal risk," used in these cases to describe the standard for jurisdiction require that there be an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it. Without an underlying legal cause of action, any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction. The district court's standard for determining reasonable apprehension of suit ignores the threshold question whether such apprehension implicated an underlying legal cause of action that existed between the parties.

There was no underlying legal cause of action between Microchip and Chamberlain in this action. Indeed, Microchip has not identified a single legal claim that it believes Chamberlain could have brought against it in the absence of this declaratory judgment action. See Aralac, Inc. v. Hat Corp. of

*Am.*, 166 F.2d 286, 295 (3d Cir.1948) (explaining that "[t]he holder of a patent has no dispute with a person who is not infringing or threatening to infringe") (citation omitted). Moreover, Chamberlain has contended, and Microchip has not sufficiently rebutted that contention, that Microchip has never been accused of infringing the patents-in-suit. While Microchip's customers may or may not have had an "adverse legal interest" or have been at "legal risk," they were not parties to this action. Nor has Microchip established a legal relationship between it and a customer that had a legal interest adverse to Chamberlain, such as the existence of an indemnity agreement between Microchip and its customer. At most, Microchip had only an economic interest in clarifying its customers' rights under Chamberlain's patents, which may have facilitated the sale of Microchip's products. Microchip perhaps would economically have benefited if its customers had no fear of suit by Chamberlain. Such an economic interest alone, however, cannot form the basis of an "actual controversy" under the Declaratory Judgment Act. *See id.* (stating that "[a]n economic interest is not enough to create justiciability"). Microchip itself was under no threat of legal harm.

*7 Contrary to Microchip's assertions, our precedent, including *Arrowhead* and *BP Chemicals*, does not support the district court's conclusion that it possessed jurisdiction. In *Arrowhead*, both the declaratory plaintiff and the patentee were competitors in the water treatment services industry. 846 F.2d at 733. The declaratory plaintiff provided its customers with all the steps of a water treatment process that the patentee alleged was covered by its patent. Arrowhead was potentially an inducer of infringement and it indemnified its customer against liability as well. Thus, there existed a legal cause of action between the declaratory plaintiff and the patentee establishing an "actual controversy" in that the patentee in *Arrowhead* could have brought a patent infringement suit against the declaratory judgment plaintiff. *Id.* at 739 (noting that "defendant's conduct has obviously created a most reasonable and compelled apprehension that continuing to sell its process could subject [the declaratory plaintiff] to liability for substantial damages"). Such an adverse legal interest between the declaratory plaintiff, Microchip, and the patentee, Chamberlain, does not exist in this action. While this court in *Arrowhead* did note that acts of the plaintiff in that case might subject it or its customers to risk of suit, in this case there is no indication that Microchip is inducing or contributing to infringement by its customers.

Nor does *BP Chemicals* support the district court's decision, as argued by Microchip. In *BP Chemicals*, the declaratory plaintiff, BP Chemicals, and the patentee, Union Carbide, were competitors in the business of licensing technology for the manufacture of ethylene polymers. 4 F.3d at 976. We affirmed the district court's holding of no jurisdiction in *BP Chemicals* on the grounds that the patentee did not place BP Chemicals or its licensees in reasonable apprehension of suit and the declaratory plaintiff failed to demonstrate that it or its licensees were actually infringing the patent-in-suit. *Id.* at 980-981. Thus, *BP Chemicals* supports Chamberlain's position, not Microchip's.

Furthermore, we do not agree with Microchip that our holding in this action would frustrate the policy behind the Declaratory Judgment Act. In *Arrowhead*, we recognized that prior to enactment of the Declaratory Judgment Act competitors in a given industry were "rendered helpless" by patentees that would engage in "scare-the-customer-and-run tactics." 846 F.2d at 735. Chamberlain and Microchip, however, are not competitors in a given industry. Chamberlain is a GDO manufacturer and Microchip is a manufacturer of integrated circuits. Microchip does not manufacture GDOs. While it may have an interest in selling its KEELOQ ® technology, such an interest does not inevitably lead to Chamberlain's competitors being induced to practice Chamberlain's patented technology. As indicated earlier, there is nothing in the record to indicate that Microchip has induced or contributed to infringement of the patents-in-suit or that the KEELOQ ® technology cannot be used without infringing Chamberlain's patent. Moreover, Microchip has not produced any agreement indemnifying a customer against infringement of the patents-in-suit. Thus, Microchip has no legal right to "clear the air."

*8 [4][5] Finally, we reject Microchip's argument that the district court possessed declaratory jurisdiction to interpret paragraph 5.09(c) of the settlement agreement. Under either Federal Circuit or Ninth Circuit law, there must be an actual controversy to sustain declaratory jurisdiction on the merits. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (requiring the existence of an actual controversy for claims under the Declaratory Judgment Act). Microchip fails to articulate how it had an adverse legal interest necessary for there to be an actual controversy. Microchip contends that it had

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

bargained for "patent peace" when it entered into the settlement agreement with Chamberlain, and that Chamberlain denied it "patent peace" by taking the position that the settlement agreement did not apply to the '703 and '986 patents. Assuming that "patent peace" relates to Microchip's or its customer's apprehension of a patent infringement suit with respect to the '703 and '986 patents, as we discussed above, however, there is no evidence supporting the contention that Microchip or its customers possessed a reasonable apprehension of suit under those patents. Moreover, Microchip's assertion that Chamberlain denied it "patent peace" is inconsistent with the fact that it was Microchip, not Chamberlain, who initiated this declaratory action in the absence of any threat of suit. If anything, it is Microchip that appears to be disturbing the "patent peace." Because there is no actual controversy between Microchip and Chamberlain, the district court lacked declaratory judgment jurisdiction to resolve any possible disagreement between the parties regarding the proper interpretation of paragraph 5.09(c), such as to determine that the settlement agreement was a patent license under the '703 and '986 patents.

Having concluded that Microchip has failed to satisfy the first criterion for declaratory judgment jurisdiction, we will not address the second criterion-- whether Microchip has engaged in activity that could constitute patent infringement.

CONCLUSION

We vacate the district court's decision granting summary judgment in favor of Microchip in its entirety, and remand for the court to dismiss the action for lack of jurisdiction.

VACATED AND REMANDED

--- F.3d ----, 2006 WL 626075 (Fed.Cir.(Ariz.))

**Briefs and Other Related Documents** (Back to top)

• 2005 WL 2235500 (Appellate Brief) Reply Brief of Defendant-Appellant, The Chamberlain Group, Inc. (Aug. 15, 2005)Original Image of this Document (PDF)

• 2005 WL 1563760 (Appellate Brief) Brief of Defendant-Appellant, The Chamberlain Group, Inc. (Jun. 13, 2005)Original Image of this Document with Appendix (PDF)

• 05-1339 (Docket) (Apr. 13, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.